### POLSON v. INGRAM.

1. The recitals in a deed are only binding upon such persons as are shown to be parties and privies.
2. The law is jealous of a claim to an easement, and the party asserting such a claim must prove his right to it clearly; it cannot be established by intendment or presumption.
3. Requests to charge upon the force and effect of testimony properly refused.
4. Upon a disputed question of easement, the judge could not properly grant a request to charge that ignored the possibility of a right obtained by grant.
5. While an acquired easement may be defeated by express grant or by prescription, the law will not presume its abandonment from twenty years' non-user; the abandonment of an easement is a question of intention to be determined by the jury.
6. Getting timber by the owner of the soil from the land covered by defendant's back-water would not extinguish defendant's easement, if such acts were not inconsistent with the easement claimed.
7. What constitutes color of title is a question of law, but whether the matter showing color exists is a question for the jury.
8. A deed, probated and recorded, and proved to have been in the possession of the party producing it, and of those under whom he claims, for more than *thirty years*, properly received in evidence as an ancient deed.

Before COTHRAN, J., Chesterfield, February, 1884.

The opinion of this court states the nature of this action, and some of the facts proved at the trial. Other matters necessary to a full understanding of the case are as follows:

A survey under order of the court showed that forty acres of land were covered with back-water from defendant's dam, of which twenty acres belonged to the plaintiffs. There was testimony to show that this land was swamp, and covered in wet weather or by high water independently of the dam, but fit for pasturage at other times; and also that the back-water destroyed juniper trees of value. Defendant's mill and dam were built about twelve years before the trial, but there had been a mill-dam there many years ago, and a part of the old dam remained. Ainsley Polson cleared some of the land now covered by back-water, and the plaintiffs have since cut hoop-poles from the land.

The deed from Parker to Ratcliff was dated May 14, 1804. The probate was in proper form and appeared to be regular. The signature of the probating officer was not proved. There was also a certificate of registry upon the deed, and proof that the public records of the county had all been destroyed. Alexander McQueen, witness, testified that this deed had been in his father's possession and his own for over thirty years; that his father held possession under it until his death in 1828, and then his father's heirs until the sale to Ingram in 1870.

The exceptions correctly state the requests to charge, and so much of the charge as appears in the brief.

*Messrs. Hough & Kennedy,* for appellants.

*Mr. C. P. Townsend,* contra.

April 21, 1885.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   The action below was commenced September 5, 1881, and was brought to recover damages for overflowing the plaintiffs' land (as alleged) with a pond of water, by the defendant Ingram. Evander Polson was made a defendant, because he did not consent to join as plaintiff. The defendant Ingram interposed as defences: 1st, a general denial; 2nd, a right to overflow; and 3rd, that he was the owner of the land as purchaser from his co-defendant, Evander Polson.

On the question of title, the plaintiffs claimed as heirs at law of one Ainsley Polson, deceased. And to support title in Ainsley Polson, their father, they introduced, first, a certified copy of a grant and plat of one thousand acres, to one Gutheridge Lyons, dated November 6, 1787, conveying the land; next, an ancient deed from Wallace, E. A. Ellerbe, and M. A. Ellerbe, to the said Ainsley Polson, dated January 6, 1848, of five hundred acres, being a part of the Lyons grant lying north of Juniper Creek, the land described in the complaint. They then proved the death of Ainsley on March 3, 1858, and that the plaintiffs and Evander were his children and heirs at law. They also proved the possession of Ainsley from two years before the deed of January 6, 1848, until his death, March 3, 1858. The de-

fendant overflowed the land in 1875 or in 1874. The youngest child of Ainsley was 30 years old at the time of the trial. No partition had ever taken place.

It was admitted that the land upon which the defendant Ingram built the dam, which caused the overflow, was also granted to Gutheridge Lyons, but of junior date to the other grant. The defendant produced an ancient deed from Parker to Ratcliff, dated May 14, 1804, purporting to convey the land upon which his mill had been erected. This deed contained recitals that the land granted to Lyons, had by him been conveyed to one Joseph Booth, and by Booth to Parker (but there was no other evidence of the truth of these recitals). It also contained the following recital: "Also it is understood, and is an express part of this contract, that the said John Ratcliff is to have the entire and exclusive privilege of drowning, or covering with water, as much of the lands of said Parker above this tract, now intended to be conveyed, as the said Ratcliff may think proper to do, by building a mill or mills on their land, and the said land so covered with water, or to be covered, is considered by the parties part of this agreement." The defendant also introduced a deed from Ratcliff to Alexander McQueen, embracing the same land, and containing in substance the same words as above, with the same recitals. Alexander McQueen died, leaving a widow, three sons, and two daughters, one of whom, to wit, Alexander McQueen, had executed a quit claim deed of this tract, to the defendant Ingram, November 23, 1870. The defendant also held a deed from Evander Polson dated May 3, 1879, and some evidence was offered to show that Evander Polson had acquired title by adverse possession.

The jury found for the defendant. The plaintiffs have appealed upon exceptions as to the charge, and refusals to charge, as follows:

1. "Because his honor, after request, refused to charge the jury, 'that the deed made by Elisha Parker to John Ratcliff, bearing date May 14, 1804, did not convey to the said John Ratcliff the right to overflow the one thousand acres granted to Gutheridge Lyons, dated November, 1787, and now claimed by the plaintiffs, as it nowhere appeared in evidence that Elisha

Parker had title to the tract claimed by the plaintiffs, or to such an easement thereon when he made said deed.'

2. "Because his honor, after request, refused to charge, 'that the mere recitals in the deeds made by Elisha Parker to Ratcliff, and also the recitals in the deed from Ratcliff to McQueen, sr., are no evidence that they had the right to overflow or cover said land with a pond of water.'

3. "Because his honor refused to charge, 'that if it has not been proven that either Elisha Parker or John Ratcliff or Alexander McQueen, sr., overflowed and covered the land claimed by the plaintiffs with a pond of water for the full period of twenty years; or that they together covered said land with water for the full period of twenty years, then there is no evidence that either the said Elisha Parker, John Ratcliff, or Alexander McQueen, sr., ever had a right to any such easement.'

4. "Because his honor refused to charge, 'that twenty years non-user will presume the abandonment of an easement.'

5. "Because his honor refused to charge, 'that if Ainsley Polson, and his heirs, held and possessed so much of the grant of land to Gutheridge Lyons as lies north of Juniper Creek, and is described in the deed made by Clement D. Wallace, E. A. Ellerbe, and M. A. Ellerbe, for the full period of twenty years, and during that time Ainsley Polson and his heirs had actual possession of a part of said land, and used the remainder of it for the purpose of getting timber and other purposes, and during all that time said land was not overflowed or covered with a pond of water, then all right to the easement is extinguished and gone, if it ever existed.'

6. "Because his honor refused to charge, 'that even if Evander Polson can hold by adverse possession, he must be confined to the land under his fence, as it has not been shown that Evander had any plat, deed, or anything else that constitutes color of title, and defines his boundary.'

7. "Because his honor erred in charging, 'that non-user would not presume the abandonment of an easement, and that it depended on what the owners of the dominant estate intended by the non-user, and that it was for the jury to say whether the owners of the dominant estate, by the non-user from the time the

old pond was discontinued until Ingram built, intended to abandon the easement.'

8. "Because his honor refused to charge, 'that if the other heirs at law of Ainsley Polson have had possession of the tract of land described in the deed of Clement D. Wallace, E. A. Ellerbe, and M. A. Ellerbe, ever since Ainsley Polson's death, and there has been no division or partition of the same between Evander and the other heirs, then Evander cannot hold by adverse possession, as the possession of the other heirs protects their rights.' It is submitted that his honor erred in charging, 'that this was true, unless you find from the evidence that his father, in his life-time, put him in open, notorious, and actual possession of his part of the land,' when there was no evidence upon which to base such a finding, and the youngest one of the heirs of Ainsley Polson was only thirty years old at the trial.

9. "Because his honor erred in charging, that it was a question of fact for them to determine whether it had been shown that Evander Polson had anything that would constitute color of title, so as to enable him to claim beyond his fence, or his *pedis possessio*, when there was no evidence that Evander had anything that constituted color of title.

10. "Because his honor erred in admitting the deed of Elisha Parker to John Ratcliff as an ancient deed, because the proof was not sufficient to allow it to go to the jury as an ancient deed.

11. "Because his honor erred in refusing a motion for a new trial, as there was no evidence to support the verdict."

These exceptions will be taken up *seriatim.* His honor declined to charge as requested in the two first exceptions, and, instead thereof, charged, 'that the recitals in a deed are only binding upon the parties and privies ; that the relation of a party and privy must first be established before the recitals are binding. One claiming an easement on the lands of another, must prove his right to it clearly. The law is jealous of such claim, and the right cannot be established by intendment or presumption." We see no error of law in this. The requests called substantially for a charge upon the force and effect of the testimony introduced, which is always a matter entirely for the jury. Instead of thus charging, his honor laid down a general propo-

sition covering the effect of recitals in deeds, when and as to whom they are binding, and also the necessity of clear proof of easements, leaving it to the jury to determine from the testimony the facts of the case under the principles which he announced. This, it appears to us, is as far as he could have gone without invading the province of the jury. The first request was based upon the assumption of a fact, which was beyond the province of the judge to make; and the second requested a charge as to the effect of the recitals in the deeds from Parker to Ratcliff, and from Ratcliff to McQueen, without regard to any testimony which might or not connect the plaintiffs therewith, which would have been misleading.

The third request was properly refused. The question at issue between the parties, was the existence of an easement, or a right on the part of the defendant Ingram to overflow the land. What constitutes an easement, or a right thereto, is a question of law, upon which a judge may charge; but whether the facts, necessary to the existence of the easement or the right, have been proved, is for the jury. This request did not ask the judge to charge as to the legal requirements of an easement, or under what circumstances it becomes a right; but it asked a charge, that supposing there was no proof of overflow by Parker, Ratcliff, or McQueen, for the full period of twenty years, then there was no evidence that either of these parties ever had such right. In other words, that these parties could only acquire the easement by an overflow of twenty years, and if there was no proof of such overflow, then there was no easement. Such a charge would have ignored easements by grant, which would have been an error of law, and would have taken from the jury the question of fact, whether there had been a grant, as this depended not simply upon the construction of the Parker, Ratcliff, and McQueen deeds, but also upon the question of fact as to the relation of the plaintiffs therewith, as charged by his honor, in answer to the two first requests.

4. His honor refused to charge, "that twenty years non-user will presume the abandonment of an easement," holding that this was a question of intention, to be determined by the jury. No doubt it requires twenty years adverse use to acquire an ease-

ment, where said easement is claimed simply from use and occupation. A grant will not be presumed from a use shorter than twenty years. An easement, however, may be created by express grant executed at the beginning of the use. And when once it has been created, and has become vested in the grantee, either by an express grant, or by prescription which presumes a grant, it then becomes a permanent right, according to the terms of the grant, which cannot be defeated or divested except by another acquiring a right in opposition thereto in one of the modes above mentioned, *i. e.*, by express grant or prescription.

True, a party in the enjoyment of an easement may abandon it, but whether an abandonment has taken place in a special case, depends upon the intention of the party claiming, which is a question of fact for the jury. This was held distinctly in the case of *Parkins* v. *Dunham* (3 *Strobh.*, 224), where the court said: "Whether a party has abandoned his right to an easement, is a question of fact and intention for the determination of the jury." It will be observed that the question of abandonment is a very different question from having the easement defeated and divested by the adverse use of another. This last question is to be determined by the character of the adverse use, and how long continued, while the former depends upon the intention of the party in possession, without regard to the claims of others. Such being the law, it would have been error for the judge to have charged, as a direct and positive proposition, "that twenty years non-user will presume the abandonment of an easement."

5. As to the fifth exception, his honor charged that whether the acts of plaintiffs in getting timber from the land would extinguish the easement, would depend upon the fact whether such acts were inconsistent with the easement; that defendant's right to the easement did not deprive the plaintiffs of such rights as were not inconsistent with the enjoyment of the easement. This was in accordance with the principles above stated.

6. The sixth exception involves a question of fact which was for the jury. There was some evidence intended to show that Evander Polson had acquired title to the land by adverse possession, and the whole question was properly left to the jury.

7. The seventh exception has already been disposed of in the discussion of the fourth.

8. The modification given by his honor to the eighth request seems unobjectionable. He sustained the request, provided there were no other principle in the case which would prevent its application, and the plaintiffs can have no just cause of complaint on account of this qualification.

9. There certainly was no error in submitting to the jury as a question of fact whether it had been shown that Evander Polson had anything constituting color of title. What constitutes color of title may be a question of law, but whether the matter showing color exists is a question of fact, and this was submitted to the jury.

10. It is claimed that it was error to admit the deed of Parker to Ratcliff as an ancient deed. This deed was more than thirty years old, was probated, and no doubt recorded; it was in the possession of the McQueens as a link in their chain of titles, and had been for over thirty years. Its admission as an ancient deed under these circumstances is sustained by abundant authority. 1 *Greenl. Evid.*, § 144, and note; *Thompson* v. *Brannon*, 14 *S. C.*, 551; *Swygart* v. *Taylor*, 1 *Rich.*, 54.

The refusal of the motion for a new trial has not been shown to be error of law.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.